**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

BYRON W. MARTZ,                                 *

Plaintiff,                                      *

v.                                              *           Civil Action  JKB 15-3284

DAY DEVELOPMENT COMPANY, L.C.,                  *
*et al.*
                                                *
Defendants.
                                    * * * * * * * * * * *

<u>**REPORT AND RECOMMENDATION**</u>

Pending before the Court are plaintiff Byron W. Martz's ("Plaintiff") Motion for Fees and Expenses, Supplemental Motion for Fees and Expenses, and Bill of Costs, which collectively seek recovery of attorneys' fees and other expenses incurred in connection with the litigation of this matter. ECF 94; ECF 118; ECF 123. Defendants Day Development Company, L.C. ("DDC") and Southlawn Lane Properties, L.L.C. (collectively, "Defendants") filed oppositions to Plaintiff's Motions for Fees and Expenses and Bill of Costs. ECF 135; ECF 136; ECF 137. Plaintiff's current counsel and the law firm of his former counsel each filed a reply memorandum to Defendants' oppositions. ECF 143; ECF 142; ECF 144. Additionally, Plaintiff's current counsel filed a supplemental memorandum requesting fees incurred in preparing and filing Plaintiff's reply memoranda. ECF 145. The Court subsequently entered an Order granting Plaintiff's Motions for Fees and Expenses but left unresolved the amount of fees and expenses to be awarded. ECF 146.

This Report and Recommendation addresses the amount of Plaintiff's award of attorneys' fees and expenses. The undersigned has reviewed each of the foregoing filings and attached materials, as well as the pleadings, orders and memoranda previously entered by the Court, and other filings made in this case, as well as the published opinion entered by the United States Court

of Appeals for the Fourth Circuit affirming the judgment in this case.[1] No hearing is necessary. For reasons stated herein, I recommend that the Court award Plaintiff fees and expenses in a total amount of $786,565.13 and enter Plaintiff's Bill of Costs in a total amount of $19,937.15.

## I.       FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff prevailed in this civil action for breach of contract and unjust enrichment, obtaining a judgment against Defendants in the amount of $1,941,250. *See* ECF 91 (Order); ECF 92 (Memorandum); *Martz v. Day Dev. Co., L.C.*, 416 F. Supp. 3d 517 (D. Md. 2019), *aff'd*, 35 F.4th 220 (4th Cir. 2022). This case arises principally from a Consulting Services Agreement entered by Plaintiff and DDC in 2003 and an amendment to that agreement entered in 2005. *See* ECF 2-5 (Consulting Services Agreement); ECF 2-8 (Amendment). The contracts obligated DDC to compensate Plaintiff if he succeeded in securing the City of Frederick's approval to amend a previously approved land development plan in Frederick County, Maryland. *Martz*, 416 F. Supp. 3d at 520–522. The contracts specified how Plaintiff would be compensated if DDC developed the land and in the alternative event that DDC sold the property for development by a third party. *Id.* However, the contracts did not specify how Plaintiff would be compensated if DDC neither developed the property nor sold it for development by another. DDC eventually conveyed the relevant parcels of land to a related entity, Southlawn Lane Properties, L.L.C., without consideration. *Id.* at 522. Plaintiff secured the approvals from the City of Frederick Department of Planning contemplated by the 2003 Consulting Services Agreement and 2005 amendment. *Id.* at 523. However, Defendants never developed or sold the land, and they failed to compensate Plaintiff for his services by January 1, 2015, as required by the contracts. *Id.* at 522.

---

[1]       *See Martz v. Day Dev. Co., L.C.*, 35 F.4th 220 (4th Cir. 2022).

In September 2015, Plaintiff filed a Complaint in the Circuit Court for Frederick County, Maryland asserting claims for breach of contract (two counts), declaratory relief, unjust enrichment, and quantum meruit, and seeking a judgment in excess of $75,000. *See* ECF 2 (Complaint). At the time, Plaintiff was represented by Thomas E. Lynch, III, Esq. and Jeremy S. Scholtes, Esq. of the law firm Miles & Stockbridge, P.C. ("M&S"). Through counsel, Defendants removed the matter to this Court in October 2015 based upon diversity jurisdiction under 28 U.S.C. § 1332. ECF 1. Following removal of the case, John E. McCann, Jr., Esq. joined in the representation of Plaintiff as co-lead counsel. Defendants answered the Complaint, and the parties proceeded to discovery in November 2015. In the latter half of 2016, while discovery was ongoing, Plaintiff retained new counsel: Leslie A. Powell, Esq. and Paul D. Flynn, Esq. of the law firm Powell Flynn, LLP ("Powell Firm").[2] The parties, through counsel, engaged in discussions of settlement before Plaintiff's M&S counsel withdrew from the matter in October 2016, but no settlement was reached. In December 2016, Plaintiff filed an Amended Complaint withdrawing his claim for quantum meruit, and discovery continued. ECF 27. Overall, discovery in this case involved written discovery, productions of thousands of pages of documents, and depositions of over a dozen witnesses, including expert witnesses for each party.

The parties filed cross motions for summary judgment in December 2017. ECF 43; ECF 44. Defendants argued *inter alia* that they did not breach the contracts as alleged because the conditions precedent for their obligation to compensate Plaintiff never occurred. ECF 43-1 at 14–15, 19–20. Defendants further argued that Plaintiff could not recover for unjust enrichment because the parties had a valid contract. *Id.* at 23–24. The Honorable Catherine C. Blake granted summary judgment in favor of Plaintiff on the issue of liability for breach of contract and denied Defendants'

---

[2]     Attorney Powell later transitioned to Powell, LLC. Both Powell Flynn, LLP and Powell, LLC are referred to as "Powell Firm" herein.

summary judgment motion. *See* ECF 53 (Memorandum); ECF 54 (Order). Defendants subsequently filed a motion for reconsideration of the Court's ruling on the parties' summary judgment motions, which Plaintiff opposed. ECF 55; ECF 56. Judge Blake denied the motion and referred the matter for mediation with a magistrate judge. ECF 60; ECF 64. In August 2017, the parties participated in a settlement conference with the magistrate judge but did not reach terms of settlement.

This matter proceeded to a bench trial of four non-consecutive days on the issue of damages, with presentation of evidence on October 5, 2018; January 3, 2019; and January 4, 2019; and closing arguments on May 29, 2019.[3] On February 21, 2019, following the close of evidence and before oral closing arguments, Defendants filed a motion for judgment as a matter of law, and Plaintiff filed a written closing argument. ECF 85; ECF 86. Each party filed a response to the opposing party's submission on March 21, 2019. ECF 87; ECF 88. Among other arguments, Defendants raised the doctrine of legal impossibility in their defense. *See, e.g.*, ECF 85-1 at 6–9. Closing arguments proceeded before Judge Blake on May 29, 2019. In a Memorandum and Order issued on September 25, 2019, Judge Blake denied Defendants' motion for judgment, entered judgment in favor of Plaintiff in the amount of $1,941,250 on his claim for unjust enrichment, and dismissed Plaintiff's claim for declaratory judgment as moot. ECF 91; ECF 92.

Defendants noticed an appeal to the Fourth Circuit in October 2019, and Plaintiff noticed a conditional cross-appeal. ECF 103; ECF 108. The parties filed appellate briefs and appeared for oral argument before the Fourth Circuit on January 27, 2022. On May 24, 2022, the Fourth Circuit issued a published opinion affirming the judgment of the district court in favor of Plaintiff. *Martz v. Day Dev. Co., L.C.*, 35 F.4th 220 (4th Cir. 2022). The Fourth Circuit held that the only condition

---

[3] The trial schedule was revised multiple times. At one point, the second day of trial was scheduled for December 5, 2018, but that date was eventually removed.

precedent to Defendants' obligation to compensate Plaintiff was Plaintiff's obtaining the approvals to amend the land development plan, that the doctrine of impossibility of performance did not excuse Defendants' failure to compensate Plaintiff, that the parties' valid contracts did not preclude the district court from awarding damages based on unjust enrichment, and that the $1,941,250 judgment was not excessive. *Id.*

## II.      PLAINTIFF'S MOTIONS FOR FEES AND EXPENSES AND BILL OF COSTS

The Consulting Services Agreement central to this case included the following provisions:

> 14. **Enforcement.** If either party brings suit to enforce any of the provisions of this Agreement, the prevailing party shall be entitled to recover court costs, expert witness fees and reasonable attorney's fees, including any such costs incurred prior to commencement of litigation. The parties waive any right to a trial by jury in any suit brought hereunder.
>
> …
>
> 17. **Governing Law.** This Agreement has been made and entered into in the state of Maryland and the laws of such state shall govern the validity and interpretation of this Agreement and the performance due hereunder. . . .

ECF 2-5 at 5, 6.

Pursuant to the enforcement provision, Plaintiff filed a Motion for Fees and Expenses and an application for a Bill of Costs on October 9, 2019, before Defendants filed the appeal. ECF 94; ECF 95. After Defendants noticed the appeal and filed an opposition to the Bill of Costs, the Clerk of Court denied the Bill of Costs without prejudice pursuant to the Court's Guidelines for Bills of Costs. ECF 115; *see also* Guidelines for Bills of Costs I.F.2 ("If a party files a timely opposition to a bill of costs either before or after any party files an appeal from the judgment serving as the basis for the bill of costs, the Clerk will deny taxation without prejudice to the prevailing party filing a new bill of costs if judgment is affirmed on appeal.").

On June 7, 2022, following disposition of the appeal, Plaintiff filed a Supplemental Motion for Fees and Expenses. ECF 118. On June 29, 2022, Plaintiff filed a new application for a Bill of Costs with a supporting memorandum, ECF 123, and a Memorandum in Support of its Motion for Fees and Expenses requesting fees and expenses incurred through the services of Plaintiff's Powell Firm counsel, ECF 124. On the same date, M&S filed a Motion for Leave to File a Memorandum in Support of Plaintiff's Motion for Fees and Expenses, ECF 126, and a Memorandum Regarding M&S's Fees requesting fees incurred for its services in this matter, ECF 127. Each of the above-described memoranda attached several exhibits, including affidavits, billing and payment records, and other documents.

On August 1, 2022, Defendants filed a memorandum in opposition to Plaintiff's proposed Bill of Costs, ECF 135, and two oppositions to Plaintiff's Motions for Fees and Expenses: one opposing the memorandum filed by Plaintiff's Powell Firm attorneys regarding their fees and expenses, ECF 136, and the other opposing the memorandum filed by M&S regarding their fees, ECF 137. On August 15, 2022, Plaintiff filed a reply to Defendants' opposition regarding Powell Firm's fees and expenses, ECF 142, and a reply to Defendants' opposition to Plaintiff's Bill of Costs, ECF 143. On the same date, M&S filed a reply to Defendants' opposition regarding M&S's fees. ECF 144. On September 21, 2022, Plaintiff filed a supplemental memorandum in support of his Motion for Fees and Expenses setting forth a request for fees incurred in filing replies to Defendants' oppositions. ECF 145.

Judge Blake entered an Order on September 21, 2022, granting Plaintiff's Motions for Fees and Expenses but only as to liability for an award, with the amount to be determined at a later date. ECF 146. The Court also granted M&S leave to file memoranda in support of a fee award for M&S's services. *Id.*

This matter was later reassigned to the Honorable James K. Bredar. On January 19, 2023, Judge Bredar entered an Order referring this matter to the undersigned magistrate judge for a report and recommendation regarding attorneys' fees. ECF 148.

## III.   LEGAL STANDARD

Plaintiff seeks recovery of its attorneys' fees, expert witness fees, and other litigation expenses pursuant to a contract between the parties. Because this case is in federal court on diversity jurisdiction, "state law governs not only the actual awarding of attorneys' fees but also the method of determining those fees." *Kiddie Academy Domestic Franchising, LLC v. Faith Enters. DC, LLC*, Civ. No. WDQ-07-0705, 2010 WL 673112, at *7 (D. Md. Feb. 22, 2010) (quoting *Dunkin' Donuts Inc. v. Guang Chyi Liu*, Civ. Nos. 99-3344 & 00-3666, 2002 WL 31375509, at *2 (E.D. Pa. Oct. 17, 2002)). The contract here provides for an award of reasonable attorneys' fees, expert witness fees, and court costs to the prevailing party, and declares that the law of the State of Maryland governs the contract's interpretation and enforcement. *See* Part II *supra*; ECF 2-5 at 5, 6. Contractual provisions that entitle a prevailing party to recover attorneys' fees and costs in litigation relating to the contract are generally valid and enforceable in Maryland. *Myers v. Kayhoe*, 391 Md. 188, 207 (2006).

The court must examine a party's fee petition for reasonableness. *Atl. Contracting & Material Co. v. Ulico Cas. Co.*, 380 Md. 285, 316 (2004) (citing *Rauch v. McCall*, 134 Md. App. 624, 638 (2000)). "The reasonableness of attorneys' fees is generally a factual determination within the sound discretion of the trial judge." *Id.* (citation omitted). Notwithstanding, the trial court does not have the discretion to refuse an award of fees altogether if an enforceable contract explicitly states the prevailing party "*shall* be entitled" to such fees. *Myers*, 391 Md. at 207–208.

The burden is on the moving party to establish that its requested fees are reasonable by providing competent evidence specifying the "services performed, by whom they were provided, the time expended, and the hourly rates charged." *Rauch*, 134 Md. App. at 639 (quoting *Holzman v. Fiola Blum, Inc.*, 125 Md. App. 602, 639 (1999), and *Maxima Corp. v. 6933 Arlington Dev. Ltd. P'ship*, 100 Md. App. 441, 453 (1994)). "[W]ithout such records, the reasonableness, vel non, of the fees can be determined only by conjecture or opinion of the attorney seeking the fees and would therefore not be supported by competent evidence." *Id.*

Where a request for fees arises from a contract between the parties containing a fee-shifting provision, a court applying Maryland law "should use the factors set forth in Rule 1.5 [of the Maryland Attorneys' Rules of Professional Conduct ("MRPC")] as the foundation for analysis of what constitutes a reasonable fee. . . ." *Monmouth Meadows Homeowners Ass'n., Inc. v. Hamilton*, 416 Md. 325, 336–37 (2010). MRPC 1.5(a) sets a standard of professional ethics applicable to all attorney-client relationships and forbids an attorney from "mak[ing] an agreement for, charg[ing], or collect[ing] an unreasonable fee or an unreasonable amount for expenses." The rule enumerates eight non-exclusive "factors to be considered in determining the reasonableness of a fee":

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
>
> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment of the attorney;
>
> (3) the fee customarily charged in the locality for similar legal services;
>
> (4) the amount involved and the results obtained;
>
> (5) the time limitations imposed by the client or by the circumstances;
>
> (6) the nature and length of the professional relationship with the client;
>
> (7) the experience, reputation, and ability of the attorney or attorneys performing the services; and

(8) whether the fee is fixed or contingent.

MRPC 1.5(a).[4] In applying MRPC 1.5 to a fee petition, a court is not required "to evaluate each factor separately[,]" *SunTrust Bank v. Goldman*, 201 Md. App. 390, 402 (2011), and need not "make explicit findings" on every factor listed in the rule, "as long as it utilizes the rule as its guiding principle in determining reasonableness[,]" *Monmouth Meadows*, 416 Md. at 340 n.13.[5] However, when applying MRPC 1.5 in a cases involving a contractual fee-shifting provision, the court "should consider the amount of the fee award in relation to the principal amount in litigation," which "may result in a downward adjustment." *Monmouth Meadows*, 416 Md. at 337. In its discretion, the court may consider "any other factor reasonably related to a fair award of attorneys' fees." *Id.* at 337–38.

---

[4] The MRPC 1.5(a) factors are quite similar to the factors adopted by the Fourth Circuit from the decision of the U.S. Court of Appeals for the Fifth Circuit in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). *See Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 n.28 (4th Cir. 1978); *In re Abrams & Abrams, P.A.*, 605 F.3d 238, 244 (4th Cir. 2010). The *Johnson* factors include

> (1) the time and labor required in the case, (2) the novelty and difficulty of the questions presented, (3) the skill required to perform the necessary legal services, (4) the preclusion of other employment by the lawyer due to acceptance of the case, (5) the customary fee for similar work, (6) the contingency of a fee, (7) the time pressures imposed in the case, (8) the award involved and the results obtained, (9) the experience, reputation, and ability of the lawyer, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship between the lawyer and the client, and (12) the fee awards made in similar cases.

*Id.*

[5] The Supreme Court of Maryland (then the Maryland Court of Appeals) has held that "the lodestar method is an inappropriate mechanism" for computing a reasonable award of fees in a case "aris[ing] from disputes between private parties of breaches of contract." *Monmouth Meadows*, 416 Md. at 335–36. In Maryland, the lodestar method remains appropriate for fee petitions based upon fee-shifting statutes. This is because such statutes "are usually designed to encourage suits that . . . will further public policy goals" and the lodestar method "is designed to reward counsel for undertaking socially beneficial litigation in cases where the expected relief has a small enough monetary value that other methods would provide inadequate compensation." *Id.* at 334 (cleaned up, citations omitted). Unlike a fee-shifting statute, "[a] contractual fee-shifting provision . . . is simply an agreement between private parties to pay the attorneys' fees and costs reasonably incurred in the course of litigation" and "usually serves no larger public purpose than the interests of the parties." *Congressional Hotel Corp. v. Mervis Diamond Corp.*, 200 Md. App. 489, 505 (2011).

## IV.   DISCUSSION

Plaintiff seeks an award of attorneys' fees for services performed by three attorneys of M&S and six attorneys of Powell Firm based upon an hourly rate charged for each attorney's time and the amount of time each attorney performed work in connection with litigating this case. The undersigned will address separately (A) the reasonableness of Plaintiff's attorneys' hourly rates in light of the local market and each attorney's experience and reputation; (B) the reasonableness of the amount of time Plaintiff's counsel spent providing services at each phase of litigation; and (C) the amount in controversy and the results obtained for Plaintiff in relation to the total amount of fees requested. Other MRPC 1.5(a) factors are considered and discussed in the course of this determination of a reasonable award of fees. Finally, I will address Plaintiff's request to recover (D) expert witness fees, (E) other litigation expenses, and (F) court costs listed in his Bill of Costs.

### A.  Hourly Rates Customarily Charged by Attorneys in the Locality

The burden rests with Plaintiff as the fee applicant to establish the reasonableness of his attorneys' hourly rates. *CoStar Group., Inc. v. Loopnet, Inc.*, 106 F. Supp. 2d 780, 787–88 (D. Md. 2000) (citing *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984)). "To inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence . . . that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Id.* (quoting *Blum*, 465 U.S. at 896 n.11). An hourly rate determined in this way is referred to as the "prevailing market rate." *Id.* at 788. "Evidence of the prevailing market rate usually takes the form of affidavits from other counsel attesting to their rates or the prevailing market rate." *Id.* But in the absence of such evidence, "the court may rely on its own knowledge of the market." *Id.*

In the District of Maryland, this "market knowledge" is captured in Appendix B to this Court's Local Rules, titled "Rules and Guidelines for Determining Attorneys' Fees in Certain Cases" ("Guidelines for Attorneys' Fees"). *Gonzalez v. Caron*, Civ. No. CBD-10-2188, 2011 WL 3886979, at *2 (D. Md. Sept. 2, 2011); *see also* L.R. Appx. B. Guideline 3 of the Guidelines for Attorneys' Fees provides a listing of ranges of hourly rates on a sliding scale based upon an attorney's years of experience. L.R. Appx. B.3. Although this guidance is "neither binding nor definitive," *Thomas v. Smith, Dean & Assocs., Inc.*, Civ. No. ELH-10-3441, 2011 WL 3567043, at *2 (D. Md. Aug. 10, 2011), the court may presume that an attorney's hourly rate is reasonable if it falls within the L.R. Appx. B.3 range corresponding to the attorney's years of experience, *Gonzalez*, 2011 WL 3886979, at *2.

Plaintiff's requests for attorneys' fees are based upon various hourly rates for attorneys with varying levels of experience, most of which fall within the presumptively reasonable ranges provided in the Guidelines for Attorneys' Fees.

The only hourly rate among these attorneys that exceeds the ranges listed in L.R. Appx. B.3 belongs to John E. McCann, Jr., Esq. of M&S. In a sworn declaration attached to M&S's memorandum, Mr. McCann states that he was admitted to the Maryland Bar in 1991 and remains a member in good standing. ECF 127-2 at 2. Mr. McCann served as co-lead counsel in this matter in 2015 and 2016, before withdrawing from the case. *Id.* During his representation of Plaintiff in this matter, Mr. McCann "served as a practice group lead for M&S' Commercial and Business Litigation . . . practice group." *Id.* Mr. McCann's status with several attorney rating services is indicative of a high reputation within the legal community. *See id.* Mr. McCann's hourly rate for litigation matters was $475 in 2015 and $485 in 2016. *Id.* The former rate rests at the high end of the range listed in L.R. Appx. B.3. for lawyers admitted to the bar for 20 years or more, and the

latter rate exceeds this range by only $10.[6]  *See* L.R. Appx. B.3.e. Given Mr. McCann's position as a leader in a business litigation practice within M&S during the time he represented Plaintiff and his standing within the local legal community, the undersigned finds his hourly rates in this matter to be reasonable.

The hourly rates of all remaining attorneys included in Plaintiff's fee petition fall within the ranges of rates outlined in L.R. Appx. B.3 and are therefore presumptively reasonable. Thomas E. Lynch, III, Esq. of M&S was admitted to the Maryland Bar in 1977. ECF 127-2 at 3. He represented Plaintiff as co-lead counsel in this matter in 2015 and 2016. Mr. Lynch's hourly rate for litigation matters was $465 in 2015 and $475 in 2016. *Id.* at 4. These rates are at or near the high end of the L.R. Appx. B.3 range for attorneys with at least 20 years of bar membership, which is justified by Mr. Lynch's substantial experience in commercial litigation. *See* ECF 127-2 at 2–3. Jeremy S. Scholtes, Esq. was a mid-level associate with M&S during his representation in this matter and had been a member of the Maryland Bar for seven years when the representation began. *Id.* at 4. Mr. Scholtes's hourly rate was $260 in 2015 and $270 in 2016, both of which fall within the L.R. Appx. B.3 range for attorneys with five to eight years of bar membership. *Id.* The undersigned finds that Attorneys Lynch's and Scholtes's hourly rates were reasonable.

---

[6]     I note a discrepancy concerning Attorney McCann's hourly rate in 2015. The table detailing M&S's fee request on page 3 of the firm's memorandum lists an hourly rate of $485 for Mr. McCann in the portion of the table outlining the work of the three M&S attorneys between August 2015 and December 2015. ECF 127 at 3. At least two invoices for work performed in 2015 also list an hourly rate of $485 for Mr. McCann. ECF 127-1 at 24, 29. However, as noted *supra*, Mr. McCann's declaration states that his standard hourly rate for litigation matters was $475 in 2015. ECF 127-2 at 2. On page 9 of its memorandum, M&S also states that an hourly rate of $475 was charged for Mr. McCann's work in this case in 2015. ECF 127 at 9.

The undersigned recommends applying the hourly rate of $475 to the four hours of Mr. McCann's work in 2015 included in the fee petition because this rate is more conservative and is specifically attested-to by Mr. McCann. Applying the $475 hourly rate results in a reduction of a negligible $40.00 from the fees listed for Mr. McCann and the total fees listed in M&S's table. *See id.* at 3. Therefore, I recommend construing M&S's total fee request to be $394,259.50, instead of $394,299.50. This recommended correction will only affect M&S's request for fees for the pleadings and written discovery phases of the firm's work in this case. *See* footnotes 8 and 9 *infra*.

Leslie A. Powell, Esq. became lead counsel for Plaintiff in 2016 and has attached an affidavit to Plaintiff's memorandum in support of his fee petition. ECF 124-1. Ms. Powell is the managing member of Powell Firm and has 35 years of experience in complex litigation. *Id.* at 2–3. Her hourly rate was $350 during her representation of Plaintiff, a rate that falls well within the L.R. Appx. B.3 range for attorneys with at least 20 years of bar membership. ECF 124 at 15. Paul D. Flynn, Esq. had more than 15 years of litigation experience when he represented Plaintiff in this matter and had hourly rates of $300 and $325, both within the L.R. Appx. B.3 range for attorneys with 15 to 19 years of bar membership. *Id.*; ECF 124-1 at 3. Attorneys Carla N. Clarke and Peter E. Ciferri each had between five and eight years of litigation experience during their involvement in this case, and each an hourly rate of $200, which is within the L.R. Appx. B.3 range for attorneys with their level of experience. *Id.* Attorneys Clark S. Adams and Heath L. Schneibolk each had less than five years of litigation experience during their involvement in this case, and each had hourly rates falling within or below the L.R. Appx. B.3 range for attorneys with their level of experience. *Id.* The undersigned finds the hourly rates of Plaintiff's Powell Firm counsel to be reasonable.

**B.  Time and Labor**

Plaintiff's requests for fees are supported by invoices issued by M&S and Powell Firm for services the attorneys provided in this case. The invoices list the dates each attorney conducted specific tasks in connection with the case with entries of time spent performing each set of tasks specified to the tenth of an hour. The undersigned finds that the law firms' invoices provide competent evidence in support of Plaintiff's fee petition. As a general matter, the invoices are detailed enough to permit an assessment of the reasonableness of the time spent by each attorney

on particular services and the resultant amount of attorneys' fees Plaintiff seeks to recover for those services.[7]

In the sections that follow, the undersigned will address separately the reasonableness of time spent by Plaintiff's prior M&S counsel and by his Powell Firm counsel at each phase of litigation, as reflected in their invoices. Where I find an inordinate amount of time spent by counsel conducting particular tasks, or where I find certain tasks non-compensable, I recommend a reasonable downward adjustment in the fees requested.

### 1. M&S Attorneys' Time and Labor

M&S requests that Plaintiff be granted an award of $394,299.50 in fees for 1,069.6 hours of work performed in this matter by Attorneys McCann, Lynch, and Scholtes in 2015 and 2016. ECF 127 at 3. The undersigned recommends construing M&S's fee request as one for $395,259.50 due to the $40.00 discrepancy in fees claimed for Attorney McCann described in footnote 6 *supra*. For reasons explained below, the undersigned recommends that the fee request be granted in the reduced amount of **$344,070.25**.

### a) Case Development, Background Investigation, and Case Administration

M&S requests a total of $2,388.50 in fees for 6.9 hours of work performed by Attorneys Lynch and Scholtes on case development and a background investigation in August 2015. ECF 127 at 4. These tasks included case administration, meetings and telephone conferences with Plaintiff and other witnesses, review of land records, and development of a case theory, all of which are compensable activities that contributed to the successful outcome of the case for Plaintiff. ECF 127-1 at 2–6; *see also* ECF 2-5 at 5 (contract provision that prevailing party is

---

[7]     The undersigned notes that the invoices provided by both law firms reflect certain modifications to aid the Court's assessment of Plaintiff's fee petition, such as indications when certain time entries are excluded from Plaintiff's request for fees and total amounts of hours and fees that are included in the request. Powell Firm counsel has modified invoices to group time entries based upon phase of litigation.

entitled to recover attorneys' fees "incurred prior to commencement of litigation"). Defendants do not specifically challenge M&S's fee request as to the case development phase. The undersigned finds the amount of time M&S counsel spent on case development reasonable and recommends that fees totaling **$2,388.50** be awarded for M&S counsel's work in this phase of the case.

### b)  Pleadings

M&S requests a total of $23,703.00 in fees for 75.8 hours of work Attorneys Lynch, McCann, and Scholtes performed on the original Complaint filed in this case between September 1, 2015, and November 16, 2015. ECF 127 at 4. The undersigned recommends construing this request as one for $23,685.00 in fees due to the $10-per-hour discrepancy in Mr. McCann's 2015 fee described in footnote 6 *supra*.[8] M&S's work on pleadings included drafting the initial Complaint, preparing numerous attachments, and handling service of process and Defendants' removal of the case to this Court, all of which are compensable activities that contributed to the successful outcome of the case for Plaintiff. ECF 127-1 at 7–25; *see also* ECF 27-1 (redline version of the Amended Complaint filed by Plaintiff's Powell Firm counsel showing that the only material amendment to the pleading filed by M&S counsel was the withdrawal of the quantum meruit claim). Defendants do not assert any specific challenge to M&S's fee request as to the pleadings phase. The undersigned finds the amount of time counsel spent on pleadings to be reasonable and recommends that fees of **$23,685.00** be awarded for M&S counsel's work in this phase of the case.

### c)  Interrogatories, Document Production, and Other Written Discovery

M&S requests a total of $164,483.00 in fees for 445.7 hours of work Attorneys Lynch, McCann, and Scholtes performed on written discovery and production of documents in this case

---

[8]     Attorney McCann performed 1.8 hours of work in the pleadings phase for which M&S requests a fee award, resulting in a discrepancy of $18. *See* ECF 127-1 at 22.

between November 17, 2015, and October 6, 2016. ECF 127 at 5. The undersigned recommends construing this request as one for $164,461.00 in fees due to the $10-per-hour discrepancy in Mr. McCann's 2015 fee described in footnote 6 *supra*.[9] These services included reviewing and discussing modifications to the scheduling order, planning discovery, conducting legal research, drafting and reviewing interrogatories and document requests, drafting and reviewing discovery responses, discussing discovery among counsel and with Plaintiff, reviewing documents prior to production, and preparing document productions. ECF 127-1 at 20–102.

Defendants argue that M&S counsel "spent excessive time drafting, revising, and reviewing answers to interrogatories and documents for production, and conferencing regarding the same." ECF 137 at 4. Defendants specifically cite M&S invoices for work performed between February and April 2016, arguing that M&S fails to explain the several rounds of review by its attorneys reflected in the invoices and that the invoices reflect "over-lawyering and over-staffing by attorneys billing for unnecessary, duplicative work." *Id.* In their opposition, Defendants reproduce M&S's time entries between February 17 and March 2, 2016, emphasizing multiple rounds of document and written discovery response review, as well as multiple conferences and communications between the M&S attorneys for which M&S requests fees for each participating attorney. *Id.* at 5–6. Defendants argue that "any award of fees to M&S must be reduced significantly in proportion to the prevalence of these entries among the M&S bills." *Id.* at 6.

M&S argues in its reply that "Defendants fail to identify specific time entries they claim should be discounted for 'duplication of effort, over-lawyering, over-staffing, and excessive billing.'" ECF 144 at 2 (quoting ECF 137). M&S further argues that the fees it seeks are

---

[9] Attorney McCann performed 2.2 hours of work in the written discovery phase in 2015 for which M&S requests a fee award, resulting in a discrepancy of $22. *See* ECF 127-1 at 23, 24, 28.

"reasonable and necessary," considering the high amount of the judgment eventually awarded to Plaintiff and considering that M&S's work in the written discovery phase spanned at least 14 months. *Id.* As to the challenged conferences among counsel, M&S argues that such conferences are compensable under the Court's Guidelines for Attorneys' Fees. *Id.* at 3.

Having reviewed M&S's invoices in 2016, the undersigned agrees with Defendant that the invoices reflect an excessive amount of time spent by multiple attorneys reviewing documents and revising written discovery responses, apparently spurred by several rounds of conferences and communications with counsel. *See, e.g.*, ECF 127-1 at 43–46. I recognize that the Court's Guidelines for Attorneys' Fees permit more than one lawyer to be compensated for attending conferences among counsel "where justified for specific purposes[.]" L.R. Appx. B.2.d. One common type of meeting that justifies compensation for every participating attorney is a "periodic conference[] of defined duration held for the purpose of work organization, strategy, and delegation of tasks in cases where such conferences are reasonably necessary for the proper management of the litigation." *Id.* For example, one such strategy conference among the three M&S attorneys appears to have occurred on February 18, 2016. ECF 127-1 at 42. However, following that date were several conferences and communications among counsel regarding discovery, which punctuate apparently duplicative rounds of written discovery response and document review by multiple attorneys. ECF 127-1 at 43–46. M&S counsel requests fees for all participants of these frequent conferences.

Perhaps more concerning is that, after M&S counsel withdrew from this matter and Plaintiff's Powell Firm counsel entered the case, Powell Firm counsel had to repeat work accomplished by M&S counsel to become familiar with the case. *See* ECF 124-2 (Powell Firm invoices reflect review of pleadings and discovery); ECF 136 at 3–5 (opposition to Powell Firm

attorneys' fee memorandum); ECF 142 at 2 (Powell Firm reply). For example, after assuming representation of Plaintiff, Powell Firm counsel spent numerous hours reviewing documents, pleadings, written discovery, and deposition transcripts in this case, as well as researching legal and factual issues M&S counsel had previously researched. *See, e.g.*, ECF 124-2 at 3–8. It is unlikely that, had Plaintiff had not changed counsel, his M&S counsel would have needed to repeat these activities or spent as much time repeating them as Powell Firm counsel spent doing them for the first time. Such duplication of effort is not compensable in an award for reasonable attorneys' fees, even if practically necessary in the circumstances. *See Goodwin v. Metts*, 973 F.2d 378, 383–84 (4th Cir. 1992) (affirming downward adjustment of fee award due, in part, to duplication of effort between old and new counsel, as well as over-staffing); *Spell v. McDaniel*, 852 F.2d 762, 769 (4th Cir. 1988) ("We have already observed that it is inappropriate to charge defendants for duplicative endeavors and overkill on the part of newly acquired counsel.").

For the foregoing reasons, the undersigned recommends, first, that an award of fees arising from the discovery-related conferences occurring between February 29, 2016, and March 11, 2016, reflect compensation for only one participant and at the hourly rate of the most senior participant. *See* L.R. Appx. B.2.d ("Generally, only one lawyer is to be compensated for client, third party, and intra-office conferences, although if only one lawyer is being compensated the time may be charged at the rate of the more senior lawyer."). Applying this recommendation would result in the removal of 11.2 hours at Attorney Scholtes's 2016 rate of $270 per hour and 1.2 hours at Attorney McCann's 2016 rate of $485 per hour, resulting in a reduction of $3,606.00.[10]

---

[10]     The dates of the relevant time entries are February 29, 2016 (conference call of 2.9 hours); March 1, 2016 (conference call of 0.5 hours); March 2, 2016 (conference calls of 0.7 hours and 0.4 hours among three attorneys); March 8, 2016 (conference call of up to 3.9 hours); March 9, 2016 (conference call of up to 2.3 hours); March 10, 2016 (conference of up to 0.8 hours between three attorneys); and March 11, 2016 (conference of 0.1 hours). *See* ECF 127-1 at 43–45.

As to the remaining 433.3 hours spent by M&S counsel in the written discovery phase of the case, the undersigned recommends a reduction of these hours to account for the excessive time counsel spent on document review and written discovery responses, as well as the eventual duplication of effort between M&S counsel and Powell Firm counsel reviewing discovery in the case. *See Citicorp U.S.A., Inc. v. Edwards*, 118 F. App'x 698, 702 (4th Cir. 2004) (affirming 20% reduction in fees and expenses "because of apparent duplicativeness of effort with other law firms, the breadth of fees sought, and the lack of detail") (cleaned up); *Goodwin*, 973 F.2d at 383–84; *In re Conklin*, 946 F.2d 306, 316 (4th Cir. 1991) (affirming district court fee award wherein attorney hours were "reduced by the number of hours spent in duplicative and repetitive work" among other reductions). The undersigned recommends that a 25% reduction be applied to the remaining amount of M&S counsel's fees requested and attributed to document and written discovery—that is, a reduction from $160,877.00 to **$120,657.75**.[11]

### d)  Depositions

M&S requests a total of $191,454.00 in fees for 497.3 hours of work performed by Attorneys Lynch, McCann, and Scholtes on depositions between April 2016 and October 2016. ECF 127 at 5. This work included planning and scheduling depositions, preparing for at least eight depositions by reviewing documents and consulting Plaintiff and other witnesses, taking depositions of defense witnesses, and defending depositions of Plaintiff's witnesses. ECF 127-1 at 49–102.

Defendants argue that M&S's requested fees include fees for the attendance of multiple M&S attorneys at several depositions and that the fees should be reduced for this reason. ECF 137

---

[11]     Because neither M&S counsel nor Powell Firm counsel is at greater fault for the duplication of work between them, the undersigned will also recommend a 25% reduction from fees requested for Powell Firm counsel's efforts to familiarize themselves with the case. The reduction from Powell Firm counsel fees is addressed in Part IV.B.2(a) *infra*.

at 7–8. In its reply, M&S points out that multiple attorneys for Defendants also attended each of the challenged depositions and that the attendance of two M&S attorneys at each deposition was justified by the need of one attorney to manage documents and exhibits while the other attorney took or defended the deposition. ECF 144 at 3–4.

The undersigned agrees with M&S that the attendance of two attorneys at each of the challenged depositions was justified. The Court's Guidelines for Attorneys' Fees provide that "[o]nly one lawyer for each separately represented party shall be compensated for attending depositions[,]" L.R. Appx. 2.b, but "a valid reason for sending two attorneys to the deposition" may justify departure from the general rule, *id.* n.†. Specifically, the presence of a second attorney may be necessary to organize "documents important to the deposition[.]" *Id.* Here, each of the challenged depositions involved the use and organization of several documents identified as exhibits. *See* ECF 144-1 (deposition transcript excerpts listing exhibits). The undersigned recommends that the attendance of two M&S attorneys at each of these depositions be compensated in the requested award of fees.

Defendants point out that three M&S attorneys attended each of two depositions—specifically, the depositions of Tom Lawrence and Robert Brownell. ECF 137 at 7. In its reply, M&S states that it "is not seeking compensation for the third attorney's attendance" at these two depositions. ECF 144 at 4. If M&S means to say that it has excluded from its fee request time spent by a third attorney in attendance at the depositions, it is not clear to me that M&S is correct about that. M&S states in its memorandum that time entries the firm has not included in its fee request are stricken through among the attached invoices. ECF 127 at 3 n.2; *see also, e.g.*, ECF 127-1 at 41–46 (striking various time entries for Attorneys Lynch and McCann and M&S support staff). None of the time entries associated with the three M&S attorneys' attendance at the two challenged

20

depositions are in fact stricken. *See id.* at 73, 76 (time entries for deposition of Mr. Lawrence on June 3, 2016, and deposition of Mr. Brownell on June 21, 2016). The invoices indicate that Mr. McCann took each of these two depositions and Mr. Scholtes assisted him, while Mr. Lynch was merely in attendance. *See id.* Mr. Lynch attended the deposition of Mr. Lawrence for up to six hours and attended the deposition of Mr. Brownell for up to 7.2 hours. *Id.* Applying Mr. Lynch's 2016 hourly rate of $475 for these 13.2 hours totals $6,270 in fees. The undersigned recommends that M&S's requested fees be reduced by this amount pursuant to L.R. Appx. B.2.b, resulting in a fee award of **$185,184.00** for the work of M&S counsel on depositions in this case.

### e)   Alternative Dispute Resolution

M&S requests a total of $12,155.00 in fees for 33.9 hours of work performed by M&S attorneys on alternative dispute resolution between August 2016 and October 2016. ECF 127 at 5–6. This work included discussing settlement options and strategy with Plaintiff, drafting settlement demand letters and other correspondence with opposing counsel, reviewing and responding to correspondence from opposing counsel, and conferring with opposing counsel. ECF 127-1 at 91–102.

Defendants argue that it is "not appropriate" for M&S to "elevate routine correspondence and discussions with opposing counsel as 'ADR' attorneys' fees." ECF 137 at 8. Additionally, Defendants claim that M&S seeks "reimbursement for attorneys' fees incurred in connection with court mandated mediation that occurred two years after M&S was replaced as Plaintiff's litigation counsel." *Id.* Defendants are apparently referring to a settlement conference conducted by the Honorable A. David Copperthite, U.S. Magistrate Judge, in August 2018, after M&S counsel withdrew from this matter and Plaintiff was represented by Powell Firm counsel. As M&S notes in its reply, Defendants are mistaken. ECF 144 at 4. M&S does not claim fees for participating in

21

the settlement conference of August 2018. M&S's fee request is for settlement negotiations its attorneys conducted directly with Defendants' counsel during M&S's representation of Plaintiff. *Id.*; *see also* ECF 127-1 at 91–102 (entries reflecting settlement discussions and correspondence).

The undersigned agrees with M&S that direct settlement negotiations with opposing counsel and consultation with clients fall within the ambit of alternative dispute resolution and are compensable. Such communications are far from "routine" or unimportant and should be encouraged as a matter of policy when conducted in good faith. The undersigned has been presented with no reason to doubt that the parties were engaged in good faith settlement discussions during the time M&S represented Plaintiff. It was reasonable for the M&S attorneys to spend approximately 40 hours on settlement discussions among themselves and with their client and settlement negotiations with defense counsel over the course of several months before the completion of discovery. The fact that these efforts did not ultimately result in a settlement of the case is no reason to deny a reasonable request of fees for them. *See Sky Cable, LLC v. Coley*, No. 5:11CV00048, 2014 WL 4407130, at *10 (W.D. Va. Sept. 8, 2014) (awarding fees for time spent on ultimately unsuccessful settlement efforts because denying requests for such fees would produce a perverse incentive to avoid settlement). The undersigned recommends that fees totaling **$12,155.00** be awarded to Plaintiff for M&S counsel's efforts toward attempting to settle this case.

### 2.  Powell Firm Attorneys' and Expert Witnesses' Time and Labor

Plaintiff, through his Powell Firm counsel, requests a total award of $399,314.50 in fees for 1,543.7 hours of work performed in this matter by six attorneys since 2016. *See* ECF 124 at 4–11, 15 (listing hours and requested amounts of fees, and discussing attorneys' hourly rates). For reasons explained below, the undersigned recommends that the fee request be granted in the reduced amount of **$391,449.25**.

### a)  Case Development, Background Investigation, and Case Administration

Plaintiff requests a total of $31,459.00 in fees for 103.3 hours of work performed by his Powell Firm attorneys on case development, background investigation, and case administration between September 2016 and October 2019. ECF 124 at 5. Exhibit B attached to Plaintiff's memorandum reflects the work of the Powell Firm attorneys on this phase of litigation, including review of pleadings, deposition transcripts, and previously produced documents and written discovery; legal research; investigating jurisdictional issues; case strategy; and investigating and discussing damages theories. ECF 124-2.

Defendants argue that Plaintiff's fee award should be reduced due to duplicative work performed between M&S attorneys and Powell Firm attorneys in passing the case from the former firm to the latter. Specifically, Defendants argue that the entirety of the first three invoices compiled in Plaintiff's Exhibit B should be deducted from Plaintiff's fee request because they reflect duplicative work resulting from Plaintiff's change of counsel. ECF 136 at 4–6.

In his reply, Plaintiff acknowledges that his Powell Firm counsel's efforts at the initial stage of the representation included reviewing pleadings and discovery produced during M&S counsel's representation. ECF 142 at 2. Plaintiff argues, however, that his fee award should not be reduced due to his Powell Firm counsel's "efforts to familiarize themselves with the case" because these efforts contributed to Powell Firm counsel's success in obtaining summary judgment on liability and then a substantial monetary award at trial. *Id.* Plaintiff further argues that it would be inappropriate to strike the first three invoices in Exhibit B in their entirety because, even if Plaintiff had not changed counsel, his M&S attorneys would have needed to review the documents produced in discovery and deposition transcripts in preparation for summary judgment motions and trial. *Id.* at 2–3. Plaintiff also points out that, although his prior M&S attorneys had researched

legal issues relating to the removal of the case to federal court and federal jurisdiction of the matter, additional research by his Powell Firm attorneys proved necessary, as it was briefed by Powell Firm counsel in the summary judgment motions and on appeal. *Id.* at 3. Attached to Plaintiff's reply are highlighted time entries in the challenged invoices that reflect work unrelated to M&S counsel's work product. *Id.* at 3–4; ECF 142-1.

The undersigned agrees with Defendants that a substantial portion of Powell Firm's counsel's services attributed to case development and background investigation appear to be duplicative of work previously accomplished by M&S counsel. The undersigned does not doubt that some revisiting of previously completed work and retreading of old ground would have been necessary even for M&S counsel had they remained in the case. However, it is unlikely that M&S counsel would have needed to expend as much time on most of the tasks conducted by Powell Firm's counsel in becoming familiar with the case. This holds true even for Powell Firm's time entries reflecting work that Plaintiff claims did not rely upon M&S counsel's work. These highlighted time entries, which are compiled in Exhibit A to Plaintiff's reply, reflect work on tasks such as legal research and investigation into jurisdictional issues and damages, as well as formulating case theory and strategy in light of the findings. ECF 142-1. While I understand Plaintiff's position that these activities did not rely upon work previously done by his prior M&S counsel, at least a significant portion of this work appears to have been also separately performed by M&S counsel, according to their invoices, and is therefore duplicative. *See, e.g.*, 127-1 at 16, 22, 83, 84. Given the apparent non-compensable duplication of services between Plaintiff's prior M&S counsel and his Powell Firm counsel shown in Powell Firm time entries attributed to case development, the undersigned recommends that Plaintiff's fee request for case development be

reduced by 25%.[12] A 25% reduction from $31,459.00 results in a fee award of **$23,594.25** attributed to case development by Powell Firm.

### b) Pleadings

Plaintiff requests a total of $1,500.00 in fees for 4.9 hours of work his Powell Firm counsel performed on amending his pleadings in December 2016. ECF 124 at 6. Exhibit C attached to Plaintiff's memorandum reflects the work of the Powell Firm attorneys on this phase of litigation, including review of local rules regarding amendment of pleadings, drafting and reviewing amended pleadings and a motion to amend pleadings, and researching related legal issues. ECF 124-3. Defendants raise no specific objection to Plaintiff's fee request as to the pleadings phase. The undersigned finds the amount of time counsel spent on amendment of pleadings to be reasonable and recommends that **$1,500.00** in fees be awarded to Plaintiff for the work of his Powell Firm counsel in this phase of the case.

### c) Interrogatories, Document Production, and Other Written Discovery

Plaintiff requests a total of $43,545.00 in fees for 158.7 hours of work Powell Firm attorneys performed on written discovery and production of documents in this case between December 2016 and July 2018. ECF 124 at 6; ECF 124-4 at 2–27 (Exhibit D). Defendants argue that Plaintiff's request is unreasonable because the parties had exchanged substantial document and written discovery before Powell Firm counsel entered the case. ECF 136 at 6. Defendants

---

[12]     This 25% reduction is recommended in addition to, and is consonant with, the 25% reduction I recommend be imposed on fees requested for M&S counsel's work on the written discovery phase of litigation, to account for duplication of services between the two firms. *See* Part IV.B.1(c) *supra*. While applying the same 25% downward adjustment, I recognize that the resultant reduction in hours and fees recommended for M&S counsel (amount to $40,219.25) far exceeds that recommended for Powell Firm counsel ($7,864.75). I believe that outcome is justified for at least two reasons: (1) M&S counsel's hourly rates were significantly higher than Powell Firm counsel's rates; and (2) as explained in Part IV.B.1(c), the downward adjustment applied to M&S's time and fees was applied also to account for excessive rounds of discovery review and multiple conferences among M&S counsel, in addition to duplicative efforts between M&S and Powell Firm.

acknowledge, however, that Plaintiff supplemented responses to interrogatories through his Powell Firm counsel. *Id.* Additionally, as he points out in his reply, Plaintiff had not engaged expert witnesses before Powell Firm entered the case. ECF 142 at 4. Powell Firm counsel retained the services of two expert witnesses on Plaintiff's behalf, facilitated the drafting of expert reports, reviewed those reports, and prepared multiple document productions to Defendants. The undersigned finds the amount of time spent on these tasks to be reasonable. For these reasons, the undersigned recommends that fees totaling **$43,545.00** be awarded to Plaintiff for the work of his Powell Firm counsel in this phase of the case.

### d)  Depositions

Plaintiff requests a total of $36,758.00 in fees for 133.4 hours of work Powell Firm counsel performed in connection with depositions in this case between December 2016 and September 2018. ECF 124 at 7. Exhibit F attached to Plaintiff's memorandum reflects the work of the Powell Firm attorneys on this phase of litigation, including discussions with opposing counsel to plan several depositions, preparing and reviewing subpoenas, researching legal issues and investigating facts relating to expert witness testimony, preparing for depositions, reviewing reports and other documents relating to deposition witness testimony, taking and defending depositions, and reviewing deposition transcripts. ECF 124-6 at 2–26.

Defendants argue that Plaintiff's request for fees for multiple attorneys attending depositions is unreasonable. ECF 136 at 10. Plaintiff acknowledges in his reply that he seeks fees for the work of two Powell Firm attorneys at the depositions of Mr. Weigand and Mr. McPherson but note that the time of the more junior attorney, Mr. Adams, was billed at the rate of a law clerk, at $120 per hour. ECF 142 at 7. Plaintiff argues that Mr. Adams's assistance to the more senior attorney in attendance, Ms. Powell, was necessary to manage exhibits and documents. *Id.* As

explained *supra*, the Court's Guidelines for Attorneys' Fees permit fees for two attorneys' work at a single deposition where supported by "a valid reason[,]" such as the need to manage "documents important to the deposition[.]" L.R. Appx. 2.b n.†. Such a valid reason supports Plaintiff's request for fees for the necessary work of both Attorneys Powell and Adams at the two expert depositions, especially considering that Mr. Adams's time was not charged at an attorney's rate. The undersigned finds that the amount of time counsel worked in connection with depositions to be reasonable.

Additionally, Defendants argue that Powell Firm invoices for work preparing Mr. Weigand for his deposition "reflect unnecessary duplication and inflated billing[.]" ECF 136 at 9. Specifically, Defendants note that the invoices reflect time entries for multiple attorneys reviewing Mr. Weigand's reports in advance of his deposition, after having previously reviewed the reports in the written discovery phase of the case. *Id.* Mr. Weigand's report was produced in March 2017, necessitating review by Plaintiff's counsel at that time, in the written discovery phase. *See* ECF 124-4 at 11. As Plaintiff suggests in his reply, it was equally necessary for Plaintiff's counsel to re-acquaint themselves with Mr. Weigand's work product in preparation for his deposition several months later, in October 2017. *See* ECF 124-4 at 17. The undersigned does not find it unreasonable for Attorney Powell to spend twelve hours both reviewing Mr. Weigand's report and rebuttal in preparation for his deposition and defending Mr. Weigand's deposition in October 2017. *See id.* The undersigned recommends that Plaintiff's request for **$36,758.00** in fees for Powell Firm counsel's work related to depositions in this matter be granted.

### e)  Motions Practice

Plaintiff requests a total of $34,088.00 in fees for 179.9 hours of work his Powell Firm attorneys performed in connection with pretrial motions practice in this case between January 2017

and September 2018. ECF 124 at 7–8. Exhibit G attached to Plaintiff's memorandum reflects the work of the Powell Firm attorneys in this phase of litigation, including work on scheduling-related motions, reviewing the law relating to summary judgment motions, reviewing the contracts at issue in the case and other evidence, reviewing Defendants' motion for summary judgment and motion to strike Mr. Weigand's appraisal report, legal research, consulting Plaintiff regarding summary judgment, and drafting and filing Plaintiff's motion for summary judgment and memoranda in support of the motion and in opposition to Defendant's summary judgment motion and motion to strike. ECF 124-7. The undersigned finds the amount of time counsel spent on these tasks to be reasonable, given the complexity and relative novelty of legal issues raised in the parties' pretrial motions. Defendants do not raise any specific challenge to Plaintiff's fee request as to the motions practice phase. Therefore, I recommend that fees totaling **$34,088.00** be awarded to Plaintiff for Powell Firm counsel's services in this phase of the case.

### f)   Trial Preparation and Post-Trial Motions

Plaintiff requests a total of $153,367.00 in fees for 589.2 hours of work Powell Firm attorneys performed in preparation for trial and on post-trial motions in this case between December 2016 and October 2019. ECF 124 at 9. A portion of Exhibit H attached to Plaintiff's memorandum reflects the work of the Powell Firm attorneys on trial preparation, including review of deposition transcripts, document review to identify trial exhibits, researching land records, drafting and reviewing trial outlines and case summaries, preparing exhibit and witness lists and stipulations, research on various legal issues and local rules, coordinating and conducting preparation of trial testimony with witnesses, and conferences regarding trial strategy. ECF 124-8 at 2–44. Another portion of Exhibit H attached to Plaintiff's memorandum reflects work on post-trial motions, including review and analysis of trial exhibits and transcripts, drafting a motion to

exclude evidence and closing argument, drafting and filing an opposition to Defendants' motion for judgment, conducting legal research, and reviewing the Court's memorandum opinion and judgment. *Id.* at 45–55. The undersigned finds the time counsel spent on the foregoing multitude of tasks surrounding the trial in this case to be reasonable. Defendants do not raise any specific challenge to Plaintiff's request for attorneys' fees as to trial preparation and post-trial motions. The undersigned recommends that fees totaling **$153,367.00** be awarded to Plaintiff for Powell Firm counsel's work in these phases of the case.

### g) Trial

Plaintiff requests a total of $16,615.00 in fees for 49.1 hours of time Powell Firm attorneys spent attending and conducting the four-day bench trial in this matter. ECF 124 at 9–10; ECF 124-9 at 2–10 (Exhibit I). Although the attorneys collectively spent a significantly greater amount of time attending the trial, Plaintiff only seeks fees for 49.1 hours of that time. The undersigned finds that the amount of time claimed is reasonable. Defendants raise no specific objection to Plaintiff's request for attorneys' fees in connection with trial. I recommend that fees totaling **$16,615.00** be awarded to Plaintiff for the work of Powell Firm counsel in this phase of the case.

### h) Alternative Dispute Resolution

Plaintiff requests a total of $8,080.00 in fees for 25.3 hours of work his Powell Firm counsel performed preparing for and participating in court-ordered mediation in August 2018. ECF 124 at 10; ECF 124-10 (Exhibit J). The undersigned finds this amount of time to be reasonable, and Defendants raise no specific challenge to it. Therefore, I recommend that **$8,080.00** in fees be awarded to Plaintiff for the work of Powell Firm counsel in connection with the settlement conference in this case.

### i)   Appellate Practice

Plaintiff requests a total of $56,342.00 in fees for 217 hours of work Powell Firm attorneys performed in the appeal of this case. ECF 124 at 10–11. Exhibit K to Plaintiff's memorandum reflects the work of the Powell Firm attorneys on the appeal, including substantial legal research, preparing and filing a brief opposing Defendants' appeal, preparing and filing a conditional cross-appeal and reply, and preparing for and presenting oral argument. ECF 124-11.

Defendants challenge Plaintiff's appellate billing as reflecting duplicative work, an unreasonable amount of time on research and drafting and revising Plaintiff's brief, and over-staffing work on the brief. ECF 136 at 11–12. Defendants argue that "[t]he issues raised on appeal were largely briefed in the district court" and did not warrant "hundreds of additional hours in legal research and brief drafting." *Id.* at 12. By way of example, Defendants challenge a combined 15.4 hours of work two Powell Firm attorneys performed on June 18, 2020, reviewing and revising the brief. *Id.*; *see also* ECF 124-11 at 14 (invoice). Defendants also challenge 16.1 hours spent by Attorney Adams researching various issues and drafting and reviewing portions of Plaintiff's brief Defendants deem "minor." ECF 136 at 12 (citing ECF 124-11 at 2, 8, 10, 11).

In his reply, Plaintiff argues that staffing "two attorneys to work together on the same brief" is reasonable and that two attorneys can draft, review, and revise different sections of the same brief at the same time without creating inefficiencies. ECF 142 at 9. Plaintiff further argues that Defendants fail to cite any authority supporting the proposition that it is unreasonable to staff two attorneys to work for a combined 217 hours on an appeal and fail to explain why they deem specific time entries in Powell Firm invoices unreasonable. *Id.* at 8–9.

The undersigned agrees with Plaintiff that 217 hours between two attorneys was a reasonable amount of time to spend on the appeal of this case, given the complexity of legal issues

in the appeal and the significant judgment of $1,941,250 at stake. Moreover, the disposition of the appeal by way of published opinion[13] speaks to the relative novelty and complexity of the legal issues involved, which also justify spending extensive time on legal research in this phase of the case. The undersigned finds Plaintiff's request for **$56,342.00** in fees (less than 3% of the judgment at stake) for the ultimately successful appellate work by his Powell Firm counsel to be reasonable and recommend awarding this fee in its entirety.

### j)  Fee Petition Preparation

Plaintiff requests a total of $17,560.00 in fees for 82.9 hours of work Powell Firm counsel performed preparing Plaintiff's fee petition, including supporting memoranda and replies, in October 2019, May 2022, June 2022, and August 2022. ECF 124 at 11; ECF 124-12 (Exhibit L to original memorandum); ECF 145 (supplemental memorandum); ECF 145-1 (Exhibit A to supplemental memorandum).[14] Defendants argue that Plaintiff's experienced counsel spent excessive time and performed duplicative work on "basic research on issues" they "could likely have handled competently in significantly less time." ECF 136 at 13. Defendants offer no support for their position that much less time and effort could have been reasonably spent on Plaintiff's fee petition than his counsel spent. Counsel's work on the fee petition was complex. It required close examination, reorganization, and editing of counsel's billing records to compute a reasonably arguable request for fees, to explain concisely the work for which fees were requested, and to present documentary support for the fee petition in a manner that complies with the Court's Guidelines for Attorneys' Fees. ECF 142 at 10; *see also* L.R. Appx. B.1.b (requiring that fee

---

[13]     *Martz v. Day Dev. Co., L.C.*, 35 F.4th 220 (4th Cir. 2022).

[14]     Plaintiff has supplemented his original request of $12,515.00 in fees for 58.8 hours, ECF 124 at 11, with a supplemental request of $5,045.00 in fees for 24.1 hours based upon counsel's work on replies, ECF 145 at 2.

petitions be "accompanied by time records" and submitted in a format organized by litigation phase). The undersigned finds that Plaintiff's counsel spent a reasonable amount of time on the fee petition and recommends that Plaintiff's fee request of **$17,560.00** for this service be granted.

### C. Amount Involved in the Litigation and Results Obtained

Incorporating the downward adjustments in fees recommended in the foregoing sections, the undersigned recommends a total award of **$735,519.50** in attorneys' fees, including $344,070.25 attributed to the work of Plaintiff's prior M&S counsel and $391,449.25 attributed to the work of his current Powell Firm counsel. The undersigned finds this award of fees to be reasonable in light of, and in comparison to, the amount at stake in this litigation and the results ultimately obtained.

Through the services of his M&S and Powell Firm counsel, as summarized above and further detailed among the invoices submitted in support of his fee petition, Plaintiff obtained a sizable judgment of $1,941,250 against Defendants. Each cause of action Plaintiff pursued in this matter arose from his central contention that Defendants breached contractual obligations owed to him and that their breach resulted in losses. In the Amended Complaint, Plaintiff alleged that he was owed a total of at least $7,615,000 in compensation for his contractual performance. ECF 27 at 26, 27. In his written closing argument, filed in February 2019, Plaintiff requested judgment in a total amount of $3,220,000. *See* ECF 86 at 23. The recommended award of attorneys' fees is less than 10% of the amount of damages asserted in the pleadings and less than 25% of the judgment he requested after the close of evidence at trial.

With the assistance of his counsel, Defendants' liability for breaching their contracts with Plaintiff was established upon Plaintiff's successful motion for summary judgment and restitution

of $1,941,250 was ordered after a four-day bench trial, which was affirmed on appeal. The recommended award of attorneys' fees is less than 38% of the judgment.

Given the highly favorable results obtained in this case, the undersigned finds no reason to impose any further downward adjustment or limitation upon Plaintiff's requested attorneys' fees beyond those recommended in Part IV.B *supra*.

### D. Expert Witness Fees

Plaintiff is entitled to recover expert witness fees under the terms of the contracts at issue in this case. ECF 2-5 at 5. He requests a total amount of $83,847 in expert witness fees, including $17,332 for William Holtzinger, Plaintiff's expert in civil engineering and land development, and $66,515 for Thomas Weigand of Treffer Appraisal Group ("Treffer"), Plaintiff's real estate valuation expert. ECF 124 at 6, 7, 9, 10. For reasons explained below, the undersigned recommends that the request for expert witness fees be granted in the reduced amount of **$47,367.00**.

### 1. William Holtzinger

Plaintiff's request of $17,332.00 in fees for Mr. Holtzinger is supported by five invoices issued between 2017 and 2019 for services rendered in connection with this litigation. ECF 124-4 at 28, 30; ECF 124-6 at 27; ECF 124-8 at 56; ECF 124-9 at 11. Mr. Holtzinger's invoices detail specific tasks that he performed between December 6, 2016, and January 4, 2019, and the amount of time associated with each task. *Id.* The invoices reflect a total of 123.8 hours of work for which Mr. Holtzinger charged Plaintiff an hourly rate of $140, including drafting his initial and rebuttal reports; reviewing contracts at issue in this case; meeting with Plaintiff, counsel, and the appraiser; reviewing defense expert reports and deposition transcripts; and preparing for and attending trial. *Id.* The invoices provide sufficient information to establish the reasonableness of the fees

requested, and I do not recommend any downward adjustment of these fees. Therefore, the undersigned recommends that Plaintiff be awarded **$17,332.00** in expert witness fees for Mr. Holtzinger's services during this litigation.

### 2. Thomas Weigand

Plaintiff's request of $66,515.00 in fees for Mr. Weigand is supported by four invoices issued by Treffer between 2017 and 2019 for services rendered in connection with this litigation. ECF 124-4 at 29, 31; ECF 124-6 at 28–30; ECF 124-8 at 57–58; ECF 124-9 at 12–13.[15] These invoices vary in the level of detail they provide regarding what tasks Mr. Weigand and other Treffer appraisers performed, and the amount of time spent performing those tasks. The first invoice, dated March 13, 2017, simply charges a flat sum of $18,000 for a real estate appraisal report for property at issue in this case without specifying tasks performed by the appraiser or any other information to support the reasonableness of the $18,000 charge. ECF 124-4 at 29. An invoice dated July 7, 2017, indicates that Mr. Weigand performed 15 hours of work at an hourly rate of $275, including a review of the report prepared by Defendants' expert appraiser Terrence McPherson, a rebuttal to Mr. McPherson's review of Mr. Weigand's report, and a meeting at Attorney Powell's office. *Id.* at 31. Mr. Weigand's invoices dated June 7, 2018, and April 24, 2019, reflect a total of 121 hours of work performed by Mr. Weigand at an hourly rate of $275 and detail amounts of time he spent on specified dates preparing for and attending each of his two depositions and the deposition of Mr. McPherson, conducting a two-over-two market study,[16]

---

[15]     Like the Powell Firm invoices submitted in support of Plaintiff's fee petition, the Treffer invoices have been modified to group expert witness fees based on the phase of litigation. Specifically, a Treffer invoice dated April 24, 2019, has been modified and separated into three documents without any overlap or duplication of charges between the three. *See* ECF 124-6 at 29–30; ECF 124-8 at 57–58; ECF 124-9 at 12–13.

[16]     "Two-over-two" refers to a style of dwelling that was contemplated for development of the land parcels at issue in this case. This type of development figured prominently into the evidence presented at trial regarding the value of the parcels. See *Martz*, 416 F. Supp. 3d at 523–24 (summary of trial testimony).

preparing for trial testimony, attending trial, and completing a follow-up memo to Attorney Powell. ECF 124-6 at 28–30; ECF 124-8 at 57–58; ECF 124-9 at 11–13. Additionally, the April 24, 2019, invoice reflects fees for other Treffer appraisers. ECF 124-8 at 57. Laura Knipschild conducted "[r]esearch, analysis and court preparation" between October 2018 and January 2019 that amounted to 24 hours of work charged at an hourly rate of $150. *Id.* Richard D'Argenio conducted two-over-two market research in September and October 2018 that amounted to 75 hours of work charged at an hourly rate of $100. *Id.*

Defendants argue that Plaintiff has failed to demonstrate that Mr. Weigand's fees are reasonable and that Mr. Weigand's invoices are not sufficiently detailed to permit an assessment of whether his fees are reasonable and compensable. ECF 136 at 10–11. Defendants argue that fees reflected in Mr. Weigand's March 13, 2017, invoice are out of proportion with "the simplicity of his assignment" and "his professional experience and background" in real estate appraisals. ECF 136 at 7. Defendants point out that this invoice billed $18,000 for a 95-page appraisal report completed within a single month that contained "large font, photos, and general boilerplate language and information of the type regularly inserted into such reports and not created anew for each report." *Id.* Defendants challenge the lack of detail in this invoice, arguing that Plaintiff fails to demonstrate that "Mr. Weigand's hours and rate were reasonably necessary for the litigation[.]" *Id.* at 8. Additionally, Defendants state that "Mr. Weigand later disavowed the report" after his deposition and corrected its flaws in a second report. *Id.* Defendants finally argue that the outcome at trial does not justify Mr. Weigand's fees because "the Court did not accept Mr. Weigand's valuation in awarding damages." *Id.* Defendants also challenge the 24 hours charged in the April 24, 2019, invoice for the services of Ms. Knipschild, arguing that these fees lack any explanation

and are unreasonable considering the 52 hours billed for Mr. Weigand's own trial preparation and significant amounts of time he billed at earlier phases of litigation. *Id.* at 10–11

In his reply, Plaintiff argues that Defendants "misrepresent the complexity" of Mr. Weigand's completion of his appraisal report and emphasize that the assignment was to appraise "undeveloped property based on contractual and hypothetical conditions under different development scenarios." ECF 142 at 13. Plaintiff further argues that Defendants overstate the significance of the errors Mr. Weigand corrected in his second report and challenges Defendants' assertion that the Court did not accept Mr. Weigand's valuation at trial. *Id.* at 14. As to Mr. Weigand's trial preparation, Plaintiff underscores the "great importance" Mr. Weigand's testimony held for Plaintiff's damages case and attaches to his reply an affidavit by Mr. Weigand offering details about his work in preparation for trial and tasks assigned to Ms. Knipschild and Mr. D'Argenio. ECF 142 at 14; ECF 142-2.

First, with respect to Mr. Weigand's March 13, 2017, invoice, the undersigned finds that Plaintiff has failed to establish the reasonableness of the $18,000 fee for the appraisal report. *See* ECF 124-4 at 29 (invoice). Although the invoice itself states that $18,000 is charged for completion of an appraisal report, and Plaintiff has supplemented this information by underscoring the complexity of Mr. Weigand's task, this information is inadequate to establish that $18,000 is a reasonable sum to charge for this work. Mr. Weigand's affidavit generally addresses his trial preparation efforts, but it offers no information regarding the tasks Mr. Weigand performed in completing his initial appraisal report, the amount of time he committed to completing the work for which the $18,000 fee was charged, or the reasonableness of the fee. While unconvinced that Plaintiff has carried his burden of establishing the reasonableness of Mr. Weigand's $18,000 appraisal fee, the undersigned does find that the appraiser's services were necessary for Plaintiff's

damages case at trial and is compensable in an award of fees.[17] The undersigned recommends a downward adjustment to the $18,000 fee by 75% for the lack of information supporting the reasonableness of Mr. Weigand's March 13, 2017, invoice.

Second, the undersigned recommends reducing an award of Mr. Weigand's fees for preparing for and attending his second deposition. In his memorandum, Plaintiff states mistakenly that Mr. Weigand did not charge Plaintiff fees in connection with his second deposition. ECF 124 at 7. On that basis, Defendants argue that Plaintiff's fee request must be reduced by amounts reflected in Mr. Weigand's April 24, 2019, invoice for his second deposition. ECF 136 at 9; *see also* ECF 124-6 at 29 (invoice). In his reply, Plaintiff acknowledges and corrects his error, stating that Mr. Weigand *did* charge him for preparing for and attending his second deposition but did not charge him for revising his report. ECF 142 at 13 n.8. Specifically, Mr. Weigand spent eleven hours preparing for his second deposition and eight hours attending the deposition, which resulted in fees totaling $5,225. ECF 124-6 at 29–30. However, the undersigned finds that it would be unreasonable to charge Defendants the full amount of Mr. Weigand's fees for his second deposition because that deposition was apparently necessitated by errors made in Mr. Weigand's initial appraisal report. In this circumstance, the undersigned finds that a 75% reduction in an award for the $5,225 in expert witness fees incurred in connection with Mr. Weigand's second deposition would be appropriate and recommends that downward adjustment.

Third, the undersigned recommends a reduction in fees reflected in the April 24, 2019, invoice for work performed in preparation for trial. Mr. Weigand's affidavit supplements information provided in the invoice about this work. ECF 142-2. In the affidavit, Mr. Weigand

---

[17]    Although Judge Blake did not adopt Mr. Weigand's valuation in determining Plaintiff's award of damages at trial, the Court did note and consider Mr. Weigand's opinion in rendering judgment and did not discredit Mr. Weigand's testimony. *See Martz*, 416 F. Supp. 3d at 524 (summarizing Mr. Weigand's opinion regarding the value of the land parcels at issue); ECF 92 at 8.

explains his expectation before trial that his familiarity with the market for two-over-two products would be a subject of cross-examination at trial. *Id.* at 2. For this reason, he assigned Mr. D'Argenio "the task of developing a historic market analysis of all two-over-two sales in the City of Frederick and Frederick County." *Id.* Mr. D'Argenio spent 75 hours "review[ing] lifetime sales activity for two-over-two products in eight targeted subdivisions." ECF 142-2 at 2. Mr. Weigand spent a total of 8.2 hours reviewing Mr. D'Argenio's report and visiting the target subdivision sites. *Id.* at 3. In October 2018, Ms. Knipschild was assigned the task of reviewing Mr. McPherson's reports to assist Mr. Weigand "in addressing relevant points of concern." *Id.* Trial preparation time billed by Mr. Weigand in October 2018 was spent reviewing his appraisal report and Mr. McPherson's reports and meeting with Plaintiff's counsel to outline testimony and prepare for cross-examination. *Id.* The foregoing trial preparation was conducted in anticipation of a trial date of December 5, 2018—the date Mr. Weigand was apparently scheduled to testify. *Id.* After the trial date was rescheduled to January 3, 2019, Mr. Weigand spent additional time in December 2018 and January 2019 preparing for trial, reviewing of his own and Mr. McPherson's reports, reviewing his own deposition transcripts, and "revisiting the subject properties as well as all the comparable properties used in his report to refamiliarize [him]self with these properties for purposes of his testimony." *Id.* In December 2018 and January 2019, Ms. Knipschild was assigned additional work "reviewing the relevant reports and deposition testimony to identify areas and concerns that would be raised on cross-examination." *Id.*; *see also* ECF 124-8 at 57 (invoice).

The undersigned agrees with Defendants that, overall, plaintiff has failed to demonstrate the reasonableness of the fees charged by Mr. Weigand for his preparations for trial. To the undersigned, the amount of time spent by the Treffer appraisers preparing Mr. Weigand for his trial testimony seems excessive and disproportionate to the needs of the case, even considering

how important Plaintiff deemed Mr. Weigand's testimony to be. Mr. Weigand spent 30.5 hours preparing for trial between September 17, 2018, and December 3, 2018, in anticipation of the December 5, 2018, trial date. ECF 124-8 at 57–58; ECF 142-2 at 3. After the trial date was rescheduled to January 3, 2019, Mr. Weigand spent an additional 19 hours on trial preparation, performing many of the same tasks he had just recently performed. *Id.* It is also remarkable that Ms. Knipschild only spent five hours of time reviewing Mr. McPherson's reports before December 5, 2018, and then, after the trial date was postponed a month, spent an additional 19 hours of that month conducting additional review of expert reports and deposition testimony. *Id.* Ultimately, Mr. Weigand testified for less than a full day at trial, on January 3, 2019.

In his reply, Plaintiff points out that "Defendants were responsible for continuing the trial"[18] and argues that "any duplication of Mr. Weigand's preparation efforts from this time period should properly be charged to Defendants." ECF 142 at 15. In the context of this case, I cannot agree. I appreciate that a continuation of a trial date may call for some duplication of trial preparation tasks to ensure that important information remains fresh in the mind of an expert witness when called to testify. But, here, the relevant trial date was continued by only one month. Without greater explanation, the undersigned cannot find that such a relatively brief continuance would call for 38 hours of additional preparation time between Mr. Weigand and Ms. Knipschild for the former's trial testimony. That Plaintiff's trial team and expert witnesses would seek to make productive use out of a postponement of a trial date is understandable, but fees for unnecessarily

---

[18]     Plaintiff attaches to his reply an undocketed letter from Defendants' counsel to Judge Blake dated November 13, 2018, requesting that the December 5, 2018, date be removed from the trial calendar and that trial resume on January 3, 2019. ECF 142-3. A review of the docket reveals that, as of November 26, 2018, the trial was still scheduled to resume on December 5, 2018. *See* ECF 75. It is unclear to the undersigned precisely when the December 5, 2018, date was removed from the trial calendar.

duplicative work and cumulative trial preparation are not reasonable and therefore not compensable. *See Goodwin*, 973 F.2d at 383–84; *Spell*, 852 F.2d at 768–70.

In summary, the undersigned finds Plaintiff's request of $66,515.00 in fees for the services of Mr. Weigand deficient in three ways: Plaintiff has failed to establish the reasonableness of (1) the $18,000 fee charged for Mr. Weigand's original appraisal report in 2017, *see* ECF 124-4 at 29; (2) the fees charged for Mr. Weigand's attendance at his second deposition, totaling $5,225, *see* ECF 124-6 at 29; and (3) the amount of time spent by Mr. Weigand and other appraisers preparing Mr. Weigand for his trial testimony between September 1, 2018, and January 3, 2019, which resulted in fees totaling $25,415, *see* ECF 124-8 at 57–58. For these reasons, the undersigned recommends applying a 75% downward adjustment to these three portions of Mr. Weigand's fees, from a total of $48,640.00 to a total of $12,160.00. The undersigned finds the remaining balance of $17,875.00 requested for Mr. Weigand's fees to be reasonable and recommends that this portion of the fees be granted without adjustment. In total, I recommend that Plaintiff be granted an award of $30,035.00 for Mr. Weigand's fees.

Combined with the fee award of $17,332.00 recommended for Mr. Holtzinger's services, the undersigned recommends that Plaintiff be granted **$47,367.00** in expert witness fees.

### E. Additional Litigation Expenses

As part of his Motions for Fees and Expenses, Plaintiff requests reimbursement of $6,094.68 for additional litigation expenses that his counsel incurred in connection with this litigation: $3,350.64 in computerized research fees, $327.99 in delivery fees, and $2,416.05 for paper copies. ECF 124 at 11. Plaintiff's request is supported by a compilation of redacted charge and payment records reflecting these costs. ECF 124-13.

Defendants challenge the documentary support for Plaintiff's request. ECF 136 at 15. They argue that the expenses requested for copies should not be granted because the records for these expenses lack sufficient detail to determine what was copied and may reflect charges resulting from Plaintiff's change of counsel and duplication of effort among Plaintiff's attorneys. ECF 136 at 15. The undersigned agrees that Plaintiff's records for copying charges do not contain information adequate to confirm the relevance, reasonableness, or use of the paper copies. *See* ECF 124-13 at 2–41. I recommend that the request for reimbursement of these copying charges be denied.

Second, Defendants argue that the records supplied for the computerized research fees do not indicate the subject matter of the research or permit an assessment of whether the research conducted was reasonable. *Id.* Plaintiff acknowledges that his counsel's computerized research invoices do not identify research topics but points out that the research topics are reflected in the Powell Firm invoices. ECF 142 at 12. All of the Lexis and Westlaw charges listed among Plaintiff's counsel's records identify the same client and reflect research dates that are contemporaneous with time entries in Powell Firm invoices that reflect legal research conducted for this case. *See generally* ECF 124-13 at 42–72. The undersigned finds $3,350.64 to be a reasonable sum of charges for computerized legal research in this case and recommends granting Plaintiff's request for reimbursement of this amount.

Third, as to counsel's shipping expenses, Defendants argue that the shipping records attached to Plaintiff's memorandum do not provide sufficient information to determine the reasonableness of the expenses listed therein. ECF 136 at 15; *see also* ECF 124-13 at 73–80 (shipping charges). Plaintiff explains in his reply that the invoices reflect shipments of plats, plans, and other documents to expert witnesses; materials to Plaintiff for his review before trial; filings

with this Court and the Circuit Court of Montgomery County, where Plaintiff recorded the judgment in this case. ECF 142 at 12. The undersigned finds the sum of these shipping expenses to be reasonable and recommends granting Plaintiff's request for total amount of $327.99.

In summary, the undersigned recommends a total award of **$3,678.63** for computerized research and shipping expenses.

### F. Bill of Costs

Plaintiff has filed a Bill of Costs seeking recovery of $25,248.38 in costs pursuant to 28 U.S.C. § 1920 and Fed. R. Civ. P. 54(d)(1). ECF 123. Section 1920 provides that the court may tax as costs the following:

> (1) Fees of the clerk and marshal;
>
> (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
>
> (3) Fees and disbursements for printing and witnesses;
>
> (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
>
> (5) Docket fees under section 1923 of this title;
>
> (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920. Rule 54(d)(1) generally provides that costs, other than attorney's fees, "should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1).

Plaintiff lists in the Bill of Costs $202.20 in filing fees of the Clerk, $13,016.64 in fees of court reporters for deposition and trial transcripts, $521.96 in witness attendance fees and travel costs, $11,487.58 in costs of copying materials necessarily obtained for use in the case, and $20 in docket fees. ECF 123. The Bill of Costs is supported by invoices, bills, and payment records for the various fees and expenses. Defendants dispute whether the costs of deposition and trial

transcripts and paper copies are recoverable, which are addressed in the following sections. Upon review of the parties' arguments and available evidence, the undersigned recommends a reduction in the costs of transcripts to $12,420.44 and a reduction in the costs of copying materials to $6,772.55.

### 1. Deposition Transcripts

Defendants challenge the costs listed in Plaintiff's Bill of Costs for deposition transcripts of several witnesses that were not used at trial or in support of dispositive motions by Plaintiff, arguing that these transcripts "were either obtained solely for discovery purposes or for the convenience of counsel" and therefore are not taxable. ECF 135 at 1. Additionally, Defendants challenge the cost of Mr. Weigand's second deposition transcript, arguing that the second deposition "would not have occurred but for the expert's complete disavowal of his first expert report. . . ." *Id.* at 2. Defendants also challenge a $25 shipping fee applied to the cost of Mr. McPherson's deposition transcript. *Id.*; *see also* ECF 123-3 at 14 (invoice for deposition transcript reflecting $25 fee for shipping and handling). Plaintiff concedes that this $25 fee should be removed. *See* Guidelines for Bills of Costs II.D.2.e (listing as not taxable "[c]ourt reporter postage or delivery charges for a transcript").

As to the challenged deposition transcripts, Plaintiff acknowledges that he seeks to recover costs of deposition transcripts for three witnesses that were not used at trial but argues that these transcripts were reasonably necessary to the case at the time they were ordered. ECF 143 at 2. Specifically, Plaintiff points out that Rand Weinberg drafted the contracts at issue in this case and, at the time his deposition transcript was ordered (in June 2016), "it was not clear whether parol evidence would be admissible or relevant to this matter." *Id.*; *see also* ECF 123-3 at 6 (invoice). Plaintiff also notes that Chris Smariga and Joe Lucado appeared on the parties' witness list in

August 2018, long after Plaintiff ordered their deposition transcripts. ECF 143 at 2. As to the transcript of Mr. Weigand's second deposition, Plaintiff argues that Defendants overstate the significance of the corrections made in Mr. Weigand's second report and that Defendants elected to take a second deposition of Mr. Weigand and to focus on Mr. Weigand's corrections as part of their trial strategy. *Id.* Defendants' focus on Mr. Weigand's initial errors justified ordering the second deposition transcript to prepare Mr. Weigand for his trial testimony. *Id.*

Taking no position on the significance of corrections made in Mr. Weigand's second report, the undersigned accepts Plaintiff's explanation for ordering the challenged deposition transcripts and also finds the orders placed for the other challenged deposition transcripts to be necessary for Plaintiff's case. "[I]n determining whether to award deposition costs, a court examines whether the deposition was reasonably necessary to the prevailing party's case at the time it was taken, not whether it was actually admitted at trial." *Simmons v. O'Malley*, 235 F. Supp. 2d 442, 443 (D. Md. 2002) (citing *LaVay Corp. v. Dominion Fed. Savings & Loan Ass'n*, 830 F.2d 522, 528 (4th Cir.1987), and other cases).

> Reasonable trial preparation . . . ordinarily includes review of the deposition transcripts of the parties and their experts, either to prepare one's own witnesses for cross-examination or to prepare to perform the cross-examination of the adverse party and her witnesses. In addition, it is ordinarily reasonable to provide expert witnesses copies of the deposition transcripts of the parties and opposing experts for their review in forming their final opinions and in preparation for defending those opinions at trial.

*Id.* Given the significance of Mr. Weigand's testimony and his need to prepare for cross-examination, the second deposition transcript of Mr. Weigand, Plaintiff's valuation expert, was reasonably necessary to the preparation of Plaintiff's damages case for trial and, specifically, Plaintiff's preparation to defend Mr. Weigand's opinion. The deposition transcripts of Messrs.

Weinberg, Smariga, and Lucado were also reasonably necessary at the time Plaintiff ordered them, for reasons stated in his reply. *See* ECF 143 at 2.

For the foregoing reasons, the undersigned recommends removal of the $25 shipping fee included in the costs of deposition transcripts listed in the Bill of Costs but no further reduction of the deposition transcript portion of these costs.

### 2. Trial Transcripts

Defendants challenge Plaintiff's request for expedited handling and copying fees included in Plaintiff's costs of trial transcripts as not properly taxable under the Court's Guidelines for Bills of Costs. ECF 135 at 3. Plaintiff does not oppose removal of $571.20 in copying fees from the costs of trial transcripts listed in the Bill of Costs. ECF 143 at 3; *see also* ECF 123-3 at 16 (invoice for trial transcript reflecting $428.40 and $142.80 in fees for two copies); Guidelines for Bills of Costs II.D.1, Note 1 ("Only the cost of one transcript is taxable if the transcript is otherwise taxable. . . ."). As to the challenged expedited handling fees, Plaintiff argues that, at the time he ordered the trial transcripts, "the briefing schedule for closing argument was not known, and Plaintiff needed to ensure the transcripts would be timely received." ECF 143 at 3.

The Guidelines for Bills of Costs provide that the cost of "expedited copy produced solely for the convenience of counsel" is not taxable "absent prior court approval." Guidelines for Bills of Costs II.D.2.a. It does not appear that the expedited handling Plaintiff ordered for trial transcripts was solely for the convenience of his counsel. No date for closing arguments was set on the last date evidence was presented at trial, January 4, 2019. My review of the docket between January 4, 2019, and February 21, 2019, (the date each party filed a post-trial brief) reflects no court-ordered deadline for these filings. Therefore, it is unclear when the deadline was set, and the undersigned credits Plaintiff's representation that no briefing schedule was in place when he ordered trial

transcripts. Notably, both parties cite and rely upon official trial transcripts in their post-trial briefs. *See* ECF 85 (Defendants' motion for judgment); ECF 86 (Plaintiff's closing argument). Considering that it was unknown to the parties when they would be required to file any post-trial briefs or present closing arguments, the undersigned agrees with Plaintiff that it was reasonably necessary for him to order trial transcripts on an expedited basis after the close of evidence. Therefore, I recommend that the trial transcript portion of the costs of transcripts listed in the Bill of Costs be reduced by $571.20 for the non-taxable copying fees with no further reduction.

In summary, the undersigned recommends reducing the transcript costs listed in the Bill of Costs by a total of $596.20 to remove non-taxable fees for shipping the McPherson deposition transcript and extra copies of trial transcripts ($25.00 and $571.20, respectively). This reduction results in a taxable cost of **$12,420.44** for transcripts on the Bill of Costs.

### 3.   Copying Costs

Defendants challenge the portion of copying costs listed in the Bill of Costs reflecting in-house copying of documents through M&S, which amounts to $6,801.07. ECF 135 at 3–5. Defendants argue that Plaintiffs fail to explain or show that the M&S in-house copying costs were necessarily obtained for use in the case, rather than for the convenience of Plaintiff and his counsel. *Id.* In his reply, Plaintiff withdraws from the Bill of Costs a portion of the challenged copying costs amounting to $4,715.03, noting that a portion of this amount was included in Plaintiff's request for attorney's fees and expenses. ECF 143 at 4. As to the remaining $2,086.04, Plaintiff maintains that this portion of the M&S in-house copying costs is taxable because these costs were for copies of the initial Complaint and exhibits to be filed in state court, a document production requested by Defendants in discovery, and exhibits for fact witness depositions. *Id.* Plaintiff provides in an

exhibit attached to his reply additional documentary support for this challenged portion of the copying costs. ECF 143-1.

The court may tax "the costs of making copies of any materials where the copies are necessarily obtained for use in the case[.]" 28 U.S.C. § 1920(4). Under the Court's Guidelines for Bills of Costs, the following costs are not taxable: "[c]opies retained by counsel for counsel's use[,]" "[c]opies provided to clients[,]" and "[c]osts related to preparing exhibit binders, absent prior court approval, prior agreement between the parties, or a showing of necessity." Guidelines for Bills of Costs II.H.2; *see also Wyne v. Medo Indus., Inc.*, 329 F. Supp. 2d 584, 590 (D. Md. 2004) ("Copies obtained merely for the convenience of counsel . . . ordinarily are not allowed.").

Considering the documentary evidence attached to his memoranda, the undersigned accepts Plaintiff's explanations for the $2,086.04 portion of the M&S in-house copying costs and finds that this amount is taxable under 28 U.S.C. § 1920(4). The first M&S cost report attached to Plaintiff's reply identifies Plaintiff and defendant DDC in the header and reflects 353 copies made on October 14, 2015, ECF 143-1 at 2, close in time to the filing of the original Complaint in the Circuit Court of Frederick County, *see* ECF 2. During that time, according to Plaintiff, the circuit court required paper copies of pleadings for filing and service. ECF 143 at 4 n.1. Two copies of the original Complaint combined with its exhibits amounts to at least 344 pages. *See* ECF 2. The remaining M&S copy reports attached to Plaintiff's reply reflect copies made contemporaneously with document discovery and fact witness depositions in this case. *Compare* ECF 143-1 at 3–8 (cost reports for copies made in June 2016), *with* ECF 127-1 at 73–75 (M&S billing records reflecting work on document productions in June 2016); *compare* ECF 143-1 at 7–9 (cost reports for copies made on July 28, 2016), *with* ECF 127-1 at 9 (M&S billing records reflecting deposition of Francis "Mike" Day on July 28, 2016) *and* ECF 144-1 at 10 (cover page of Mr. Day's deposition

transcript dated July 28, 2016). Copies made for the filing and service of pleadings, productions of documents in discovery, and deposition exhibits are necessary for use in litigation. Therefore, the undersigned finds the foregoing in-house copying costs totaling $2,086.04 to be taxable.

For the foregoing reasons, the undersigned recommends that the copying costs listed in the Bill of Costs be reduced by $4,715.03 (withdrawn by Plaintiff) to an amount of **$6,772.55**, without further reduction.

## V.      CONCLUSION

In sum, the undersigned recommends the following:

1.      Award fees and expenses to Plaintiff in a total amount of **$786,565.13**, consisting of $344,070.25 in attorneys' fees for the services of M&S counsel, $391,449.25 in attorneys' fees for the services of Powell Firm counsel, $47,367.00 in fees for the services of expert witnesses, and $3,678.63 in other litigation expenses; and

2.      Enter a Bill of Costs for Plaintiff in a total amount of **$19,937.15**, consisting of $202.20 in filing fees of the Clerk, $12,420.44 in fees of court reporters for deposition and trial transcripts, $521.96 in witness attendance fees and travel costs, $6,772.55 in costs of copying materials necessarily obtained for use in the case, and $20 in docket fees.

Any objections to this Report and Recommendation must be served and filed within fourteen (14) days, pursuant to Fed. R. Civ. P. 72(b) and L.R. 301.5(b).

Date: March 3, 2023.

_____/S/_____
Matthew J. Maddox
United States Magistrate Judge